Moss, Judge,
delivered the opinion of the court:
In this case the Government advertised for sale thirteen different lots of merchandise. The property was described in printed advertisements as separate lots of merchandise. Each lot was identified by a lot number, and the contents of each lot were described by an item number, and the quantities of the different lots were specifically stated. Plaintiff’s bids on the thirteen lots were accepted, and he deposited $12,000 in Liberty bonds. One lot consisted of cocoa, another of preserves, and still another of leggins; the remaining ten lots were of stockings. After the sale plaintiff ascertained that only four of the thirteen lots of merchandise had been separated or made up into lots, and these four consisted of the cocoa, the preserves, the leggins, and one lot of the stockings, number 368. The remaining nine lots of stockings were included in one large mass of stockings consisting of three millions of pairs located in a warehouse. Plaintiff demanded delivery of the segregated lots, the cocoa, the preserves, the leggins, and the lot of *29 stockings, number 368. The Government, however., declined to deliver' any part of said merchandise unless plaintiff would pay the entire purchase price of the thirteen lots. In addition to the deposit of Liberty bonds, for which the Government has received $12,585.94, the Government has retained the sum of $1,991.23, which plaintiff paid for the cocoa, preserves, and leggins, and the further sum of $91.19 demanded by the Government as storage charges on said three lots, mailing a total of $20,668.36 paid by plaintiff to the Government. This suit is for the recovery of said amount.
The sale occurred on November 23 and 24, 1922. The merchandise was purchased for immediate delivery and resale. On November 25, 1922, plaintiff, by letter, requested the delivery of the merchandise, and was advised that the delivery would be ready on November 27 or 28. On November 27 plaintiff again requested the delivery of the goods, and was informed that the merchandise would be assorted into lots which would take some time. On November 28 plaintiff renewed his request for the delivery of the merchandise and .tendered to the Government letters of credit in the aggregate sum of $89,082 in payment of the balance due. Plaintiff was then informed that the Government was not in a position to deliver the merchandise, and that plaintiff would be notified when said goods were ready for delivery, whereupon plaintiff formally rescinded the purchase of the entire lot of merchandise, and demanded the return of the amount paid in as aforesaid.
Unavailing efforts were thereafter made to effect an adjustment of the differences between plaintiff and the Government growing out of the transaction. Plaintiff was advised by an officer of the Government that plaintiff’s purchases of stockings amounted to 50 per cent, or 52 per cent of the total sales of stockings, and that he would receive that proportion of each kind and grade as assorted by the Government after the sale, and that this method would also be applied to the stockings contained in lot number 368, which had been made up before the sale, and had been inspected by plaintiff prior to the sale. (Finding XVII.) Thereupon an immediate investigation was made by plaintiff, in company *30 with representatives of the Government, which disclosed the fact that the stockings in the warehouse were contained in bales consisting of different brands and makes, but the actual contents of which were unknown, and the contents of each bale differed largely from the contents of other bales. Plaintiff was then informed that it was not the intention of the Government to open said bales and assort their contents. (Finding XVIII.) The Government did not at any time separate, or make up, or tender to plaintiff, lots of stockings-conforming to the lots as described in the catalog and as purchased by plaintiff. (Finding XX.)
The terms of the sale contained the notice that the property listed in the catalog would be open for inspection for a period of one week prior to the sale, during which time prospective buyers would have an opportunity to examine-such property, and that failure to inspect same would not be considered as ground for adjustment or rescission. It was-further stated in the terms of sale that “ Samples of same-on display are believed to be representative and descriptions accurate. However, inspection is urged prior to sale, as no-claims will be entertained should the articles vary from the-samples or not come up to the expectations of the purchaser as to condition, quality, shape, or for any other reason.” It is defendant’s contention that with these warnings plaintiff' can not now complain that said stockings were not segregated, nor made Up into lots as described in the catalog. The lot of stockings described in the catalog as number 368 was shown to plaintiff, and being satisfied with his inspection of same, and being advised also that the lots of stockings were in different parts of the building, he made no-further inspection. We are of the opinion that plaintiff was justified in assuming that the remainder of the stockings were likewise made up in lots in accordance with the terms-of the advertisement, and as specifically set forth in the catalog. His bids were based on specified lots of merchandise particularly described in the terms of the sale. The identity of the merchandise sold could be established only by specified lot and lot number. Plaintiff did not bid for-nor purchase unascertained merchandise to be selected by-the Government from a large mass containing three million- *31 pairs of stockings. He agreed to purchase the definite lots stated in the catalog, and defendant accepted plaintiff’s bids, in the terms of the catalog, and attached to its letter of acceptance and award an itemized list of the property purchased by lot number and- description. Plaintiff bid for certain merchandise itemized as above set forth, and by accepting plaintiff’s bid defendant agreed to deliver such merchandise so identified and described.
The question in this case differs essentially from the principle involved in cases of sales of property sold “ as is,” and “ where is,” without warranty or guaranty as to quality, character, conditions, etc., etc. The question here goes-to the identification of the thing sold and is not a mere-matter of warranty. This distinction is pointed out in the case of United States v. Koplin, 24 Fed. (2d) 840.
It is claimed by the defendant that an announcement was-made at the beginning of the sale to the effect that the lots described in the catalog were not identified, or separate, and that the Government would segregate the lots as nearly as possible into the different grades or makes, and that buyers would be given their percentage of the amount so segregated. It was testified by certain witnesses who were bidders, and were present at the beginning of the sale, that they heard no such announcement. However that may be, it is shown by uncontradicted evidence that plaintiff was late in his attendance at the sale, and no such announcement was made after his arrival, nor did he receive any information concerning same. The catalog contained the following provision: “ No representative of the Government is authorized to make any statement or representation as to quality,, character, condition, size, weight or kind, of any property offered at this sale * * (Our italics.) It was said in the Koplin case, supra, “ The catalog, which was the authority for the auction, expressly stated that there was no power in those conducting it to make representations or sales by sample.”
The Government not only failed to comply with the terms of the sale as to the nine lots of stockings which were never-segregated, but declared its purpose of reassorting lot number 368, which had been made up before the sale.
*32 This was the first Government sale of stockings where one large lot was described as several distinct lots, and the reason for the adoption of this unusual method of advertisement and sale was stated to be that a better price would be obtained by such method.
The Government thereafter sold all of the property involved in this controversy, and claims to have sustained .a loss which exceeds the amount paid by plaintiff, and retained by defendant, in the sum of $945.08.
We have reached the conclusion under the facts in this case that plaintiff had the right to rescind the contract and is entitled to recover the amount paid by plaintiff as herein-■above set forth, to wit: $20,668.36.
Sinnott, Judge; GReen, Judge; Graham, Judge; and .Booth, Chief Justice, concur.